IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| ALICIA J. BROWN PENNER,<br>    Plaintiff | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 1:15cv00049 |
| NANCY A. BERRYHILL,[1]<br>  Acting Commissioner of<br>  Social Security,<br>    Defendant | )<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM OPINION**<br><br>BY: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Alicia J. Brown Penner, ("Penner"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by transfer based on consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Oral argument has not been requested; therefore, the matter is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Berryhill is substituted for Carolyn W. Colvin, the previous Acting Commissioner of Social Security.

829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "'substantial evidence.'"'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Penner protectively filed an application for DIB on May 13, 2010, alleging disability as of July 29, 2009, due to tinnitus nitrous, vertigo and mitral valve prolapse. (Record, ("R."), at 308-09, 388, 392.) The claim was denied initially and on reconsideration. (R. at 131-59.) Penner then requested a hearing before an administrative law judge, ("ALJ"), and a hearing was held on March 21, 2012, at which Penner was represented by counsel and a vocational expert testified. (R. at 92-129, 163, 200.) By decision dated April 13, 2012, the ALJ denied Penner's claim. (R. at 163-80.) After the ALJ issued his decision, Penner pursued her administrative appeals, (R. at 243), and the Appeals Council remanded her claim to the ALJ for further evaluation. (R. at 185-89.)

On remand, by decision dated February 27, 2014, the ALJ, again, denied Penner's claim. (R. at 16-44.) The ALJ found that Penner met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2016. (R. at 18.) The ALJ also found that Penner had not engaged in substantial gainful activity since her alleged onset date of July 29, 2009.[2] (R. at 18.) The ALJ

---

[2] Therefore, Penner must show that she became disabled between July 29, 2009, the alleged onset date, and February 27, 2014, the date of the ALJ's decision denying DIB benefits.

-2-

Case 1:15-cv-00049-PMS   Document 15   Filed 02/17/17   Page 2 of 12   Pageid#: 1211

found that the medical evidence established that Penner suffered from severe impairments, namely congenital hand and foot bone shortening, degenerative disc disease, migraines, vestibular system disorder, obstructive sleep apnea, obesity, affective disorder, anxiety disorder and somatoform disorder, but he found that Penner did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19-22.) The ALJ found that Penner had the residual functional capacity to perform light work[3] that did not require occasionally lifting items weighing more than 50 pounds, frequently lifting items weighing more than 20 pounds, sitting for more than five hours in an eight-hour workday, standing more than three hours in an eight-hour workday or walking more than one hour in an eight-hour workday. (R. at 22.) The ALJ also found that Penner could occasionally push/pull with both hands, frequently handle, finger and feel with both hands, continuously reach both overhead and in all other directions with both hands, frequently operate foot controls with both feet, should never climb ladders, ropes and scaffolds, could frequently stoop and crouch, occasionally climb ramps/stairs, balance, kneel and crawl, occasionally work around unprotected heights or moving mechanical parts, could be continuously exposed to operating a motor vehicle, humidity and wetness, dusts, odors, fumes, temperature extremes and vibrations. (R. at 22.) He also found that Penner could understand, remember and carry out simple and complex instructions, make judgments on simple and complex, work-related decisions, but she had a moderate limitation on her ability to interact appropriately with the

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2016).

public, supervisors and co-workers and on her ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 22.) The ALJ found that, through the date last insured, Penner was unable to perform her past relevant work. (R. at 43.) Based on Penner's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that, through the date of his decision, jobs existed in significant numbers in the national economy that Penner could perform, including jobs as a small parts assembler, a laundry folder and an electronic worker. (R. at 43-44.) Thus, the ALJ found that, through the date of his decision, Penner was not under a disability as defined by the Act, and was not eligible for DIB benefits. (R. at 44.) *See* 20 C.F.R. § 404.1520(g) (2016).

After the ALJ issued his decision, Penner pursued her administrative appeals, (R. at 12), but the Appeals Council denied her request for review. (R. at 1-3.) Penner then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2016). The case is before this court on Penner's motion for summary judgment filed February 10, 2016, and the Commissioner's motion for summary judgment filed March 21, 2016.

## II. Facts

Penner was born in 1977, (R. at 308, 388), which, at the time of the ALJ's decision, classified her as a "younger person" under 20 C.F.R. § 404.1563(c). Penner has high school education and past work as a cake decorator, a cashier, a draw warp operator, a material handler and a waitress and baker. (R. at 393-94.)

In rendering his decision, the ALJ reviewed records from Stuarts Draft Family Practice; Blue Ridge Footcare & Surgery, PLC; Augusta Medical Center; Meadowcrest E.N.T. & Facial Cosmetic Center; Harrisonburg Ob/Gyn Associates, P.C.; University of Virginia Hospital Department of Neurology; Dr. Leslie Ellwood, M.D., a state agency physician; Stonsa N. Insinna, Ph.D., LCP, a state agency psychologist; Luc Vinh, a state agency medical consultant; Sandra Francis, Psy.D., a state agency psychologist; Dr. Scott Kohler, M.D., a neurologist; RMH Center for Sleep Medicine; Dr. Glenn E. Deputy, M.D., a neurologist with Harrisonburg Medical Associates; Rockingham Memorial Hospital; Dr. Darin Christensen, M.D., a psychiatrist with Shenandoah Psychiatric Medicine; Janet S. Bienen, LPC, with Page County Counseling PLC; Joseph J. Cianciolo, Ph.D., a consultative licensed clinical psychologist.

Since Penner contests only the ALJ's finding as to her physical residual functional capacity, the court will address only the evidence of record on this issue. The medical evidence of record shows that Penner began treating for complaints of severe headaches and dizziness as early as 2009. (R. at 588, 603-04, 610, 624.) Based on a lack of objective findings, it was suggested that Penner's symptoms might have been functional in nature or due to a personality disorder. (R. at 593, 608, 614.)

Penner underwent a Neuropsychological Evaluation by Stephen Zieman, Ph.D., of the University of Virginia Department of Neurology, on January 14, 2010, to rule out dementia versus pseudodementia. (R. at 598.) Penner complained of worsening cognitive abilities, specifically for short-term memory, attention,

concentration and motor coordination. (R. at 598.) Penner reported weakness in both hands, swelling of her extremities, fatigue and dizziness and vertigo walking down stairs. (R. at 598.) She reported a history of post-parturm depression, but denied any then-current problem. (R at 599.) Penner presented somewhat disheveled with a slow gait, but no significant deficits in mobility. (R. at 599.) Sensory-motor coordination appeared normal; there were no observed significant deficits in her speech, language, expression or comprehension; she gave up easily on tasks; and she voiced physical complaints, then appeared to recover. (R. at 599.) Dr. Zieman stated that the results of her evaluation might underestimate her then-current capabilities. (R. at 599.) He estimated her intelligence in the average range. (R. at 600.) She performed poorly on numerous tests, but Dr. Zieman noted that her effort was poor. (R. at 600-01.) Dr. Zieman stated that Penner was not experiencing the early stages of a neurodegenerative etiology and, instead, stated that she appeared to meet the criteria for a conversion disorder. (R. at 602.)

Dr. Glenn E. Deputy, M.D., a neurologist, eventually diagnosed Penner with occipital neuraligia bilaterally, which he treated successfully with nerve block injections. (R. at 836-46, 878, 881-82.) In 2010, when Penner suggested to Dr. Deputy that she was disabled, he noted: "So far it is unclear to me as to whether there is any neurological disability." (R. at 846.)

State agency physician Dr. Leslie Ellwood, M.D., completed a Residual Functional Capacity Assessment on Penner on November 30, 2010. (R. at 138-39.) Dr. Ellwood stated that Penner could lift items weighing up to 50 pounds occasionally and 25 pounds frequently and could stand and/or walk up to six hours and sit up to six hours in an eight-hour workday. (R. at 138.) Dr. Ellwood stated

that Penner could frequently climb ramps/stair, ladders, ropes and scaffolds, stoop, kneel, crouch and crawl and occasionally balance. (R. at 138.)

Penner was treated at the Augusta Health Pain Management Clinic by Dr. Victor C. Lee, M.D., and John T. Rhodes, PA-C, beginning on January 4, 2013. (R. at 1065-1122). At her initial visit, Penner reported numbness and weakness in her upper and lower extremities and dizziness, but did not report any problems walking or falling. (R. at 1066.) Penner's upper and lower extremity ranges of motion were full with no erythema, edema or increased temperature. (R. at 1066.) Congenital deformities of her hands and feet were noted. (R. at 1066.) Range of motion in her cervical and lumbar spine was full. (R. at 1066.) Penner complained of some bilateral greater occipital tenderness and bilateral lower lumbar facet tenderness with palpation. (R. at 1066.) Bilateral sacroiliac tenderness, mild piriformis tenderness and paraverterbral lumbar muscle spasm was noted. (R. at 1066-67.) Straight leg raise test was negative. (R. at 1067.) Although this practice treated Penner through at least November 12, 2013, none of the physicians ever placed any restrictions on her activities or provided any assessment of her work-related abilities.

Dr. Matthew S. Hogenmiller, M.D., with Augusta Health Rheumatology and Osteoporosis, saw Penner on July 5, 2013, with regard to a possible connective tissue disease. (R. at 1032-34.) Penner reported treatment by a pain clinic for years for back pain and migraine headaches. (R. at 1032.) Penner said her primary problem was pain in her hands and feet. (R. at 1032.) She also complained of pain throughout her body, as well. (R. at 1032.) Dr. Hogenmiller noted a mild decrease in active range of motion of Penner's neck. (R. at 1033.) He noted no tenderness in

her hands or feet, but more than 11 tender points throughout her body. (R. at 1033.) Dr. Hogenmiller noted that Penner's muscle strength was normal everywhere except her grip strength, which was decreased in both hands. (R. at 1033.) Dr. Hogenmiller stated that there were no findings suspicious for inflammatory arthritis. (R. at 1033.)

Penner underwent nerve conduction studies of her upper extremities on August 30, 2013, at the University of Virginia Department of Neurology. (R. at 1048-51.) These studies were normal. (R. at 1051.)

Dr. Scott Kohler, M.D., performed a consultative examination of Penner on August 31, 2013. (R. at 988-94.) Dr. Kohler stated that Penner alleged disability due to migraine headaches, fatigue, depression and leg pain and numbness. (R. at 988.) Penner reported that she had suffered from migraine headaches since 2013. (R. at 988.) She described these headaches as throbbing pain exacerbated by stress with a pain intensity of a 10 on a 10-point scale. (R. at 988.) Penner said that her headaches affected her work ability, in that they resulted in poor focus and decreased concentration. (R. at 988.) She said that her fatigue affected her work ability because she would frequently fall asleep. (R. at 988.) She said that her depression affected her work ability, in that it made it difficult to be around others. (R. at 988.)

Penner also reported a history of leg weakness and numbness secondary to somatoform disorder. (R. at 988.) She said that these symptoms were exacerbated by increased physical activity and that she had difficulty standing, walking and lifting. (R. at 988-89.) Dr. Kohler noted that Penner was 5 feet, 4 inches tall and

-8-

Case 1:15-cv-00049-PMS  Document 15  Filed 02/17/17  Page 8 of 12  Pageid#: 1217

weighed 259 pounds. (R. at 990.) He also noted bilateral foot and hand deformity with very short metatarsal and metacarpal bones bilaterally. (R. at 991.) Dr. Kohler noted that Penner had a symmetric, steady gait, good hand-eye coordination and no palpable muscle spasms with full muscle strength with the exception of mild decrease in her hand grip bilaterally. (R. at 991.) He noted that Penner's sensory examination was decreased to light touch in her left arm, and straight leg raise test was negative bilaterally. (R. at 991.) Penner's reflexes were normal. (R. at 992.) There was no joint swelling, erythema or effusion, but there was some tenderness to palpation in her bilateral lumbar paraspinal muscles. (R. at 992.) Dr. Kohler noted that Penner was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table. (R. at 992.) All range of motion testing was normal. (R. at 992-93.)

Dr. Kohler wrote that, based on his examination, Penner could lift and carry items weighing up to 50 pounds occasionally and 20 pounds frequently. (R. at 994.) He said that Penner could occasionally bend, stoop, crouch and squat. (R. at 994.) He said that she had no limitations with reaching. (R. 994.) He said that she could occasionally handle, feel, grasp and finger. (R. at 994.)

On August 31, 2013, Dr. Kohler completed a Medical Source Statement Of Ability To Do Work-Related Activities (Physical) form, which stated that Penner could occasionally lift and carry items weighing up to 50 pounds; frequently lift items weighing up to 20 pounds, walk for up to one hour, stand for up to two hours and sit for up to five hours in an eight-hour day. (R. at 996-1001.) On this form, Dr. Kohler indicated that Penner could frequently handle, finger, feel, stoop and crouch. (R. at 998-99.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2016); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2016).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Penner argues that the ALJ's decision is not based on substantial evidence of record. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 10.) In particular, Penner argues that the ALJ erred by failing to properly evaluate the opinion evidence of Dr. Kohler. (Plaintiff's Brief at

-10-

11-14.) Penner also claims that the ALJ erred in not presenting a proper hypothetical to the vocational expert. (R. at 15-17.)

Based on my review of the record, I find that the ALJ erred in his weighing of the medical evidence. It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(c), if he sufficiently explains his rationale and if the record supports his findings.

In this case, the ALJ stated in his opinion that he was giving the opinions of Dr. Kohler, contained in his assessment of Penner's work-related abilities, "greater weight." (R. at 42.) In his assessment, Dr. Kohler stated that Penner could stand up to only two hours in an eight-hour day. (R. at 997.) The only other medical evidence contained in the record of Penner's work-related abilities was provided by the state agency physician, Dr. Ellwood, who stated that Penner could stand and/or walk up to six hours in an eight-hour work day. (R. at 138.) The ALJ, however, stated that he was giving this opinion "only partial weight" because it did not account for Penner's pain clinic treatment, congenital hand and foot deformities or her spinal problems with subsequent epidural steroid injection treatments. (R. at 41.) There is no other weighing of the opinion evidence

-11-

regarding Penner's work-related physical abilities. Nonetheless, the ALJ rejected Dr. Kohler's opinion that Penner could stand only two hours in an eight-hour workday. Instead, he found that Penner could stand up to three hours in an eight-hour workday. This finding simply is not consistent with the ALJ's statement that he was giving Dr. Kohler's opinion the greater weight. Therefore, I find that substantial evidence does not exist to support the ALJ's finding as to Penner's physical residual functional capacity.

It is important to note that the vocational expert testified that, if Penner could stand only two hours in an eight-hour workday, there would be no jobs available that she could perform. (R. at 82.)

Based on the above, I find that substantial evidence does not exist in the record to support the ALJ's finding that Penner was not disabled. An appropriate Order will be entered remanding Penner's claim to the Commissioner for further development.

ENTERED: February 17, 2017.

                                          s/ *Pamela Meade Sargent*
                                             UNITED STATES MAGISTRATE JUDGE